UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JASON CALDWELL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 12-253-DCR |
| ) | |
| V. ) | |
| ) | |
| NANCY A. BERRYHILL, Acting ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Jason Caldwell ("Caldwell" or "the Claimant") and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 20, 21] Caldwell contends that the administrative law judge ("ALJ") assigned to his case erred by denying his claims for disability income benefits ("DIB") and supplemental security income ("SSI"). [Record No. 20-1] He requests that the Court direct a finding of disability or, alternatively, remand the matter for further administrative proceedings before a new ALJ. [Record No. 20-1, p. 12] The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Caldwell.

## I.   Procedural History

On March 22, 2010, Caldwell filed concurrent applications for a period of disability and DIB under Title II of the Social Security Act ("the Act") and SSI under Title XVI of the Act. [Administrative Transcript, "Tr.," 374, 379] Caldwell alleged that his disability began

- 1 -

March 5, 2010. [Tr. 4] The Social Security Administration ("SSA") denied his applications initially and upon reconsideration. [Tr. 169–96] Caldwell requested an administrative hearing before an ALJ, who issued a written decision denying benefits on August 1, 2011. [Tr. 200–209] He sought review by the Appeals Council, which was denied. [Tr. 214]. Caldwell appealed to the United States District Court for the Eastern District of Kentucky. However, the Commissioner moved to remand the case pursuant to sentence six of 42 U.S.C. § 405(g) because significant portions of the audio recording of the ALJ hearing were inaudible. [Record No. 8] This Court remanded the matter for further administrative proceedings. [Record No. 9]

Upon remand, ALJ Don Paris conducted a new hearing on August 5, 2014. [Tr. 21] ALJ Paris issued a written decision denying benefits on August 22, 2014. [Tr. 4–15] Caldwell filed for review with the Appeals Council, which was denied on April 14, 2016. [Tr. 789] Accordingly, the claimant has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Background

Caldwell was 39 years-old at the time of the ALJ's decision and has a high school education. [Tr. 14–15] He attended special education classes and graduated from high school in 1994. [Tr. 26, 45] He also has some vocational training in mining, but never worked in that field. *Id.* Caldwell was employed previously as a bus monitor, janitor, security guard, and in a farm supply store. [Tr. 26–29] He stopped working in March 2010. [Tr. 597] At the time of the administrative hearing, Caldwell lived with his parents and he held a driver's license, which he used to drive to church and to shop. [Tr. 25]

Caldwell contends that he is unable to work due to pain in his neck and low back, which began after an automobile accident in 2003. [Tr. 30] He required neck surgery following the car accident and has been treated with narcotics for more than ten years. [Tr. 34–36] Caldwell reports that the accident also resulted in a skull fracture, head injuries, and inner ear damage. [Tr. 635] As a consequence, he contends, he has trouble hearing, as well as a mental condition that prevents him from concentrating and following directions. [Tr. 598]

Caldwell reported being five feet, four inches tall and weighing 245 pounds. [Tr. 25] He testified that he did not walk or exercise on a regular basis, but believed that he could walk and stand for approximately 30 minutes before stopping to rest. [Tr. 37] He further testified that he was only able to sleep between two and three hours each night. [Tr. 39] Caldwell denied having been treated by a mental health professional and denied needing such treatment. [Tr. 40]

On May 29, 2010, Helen O'Donnell, M.D., examined Caldwell regarding his allegations of physical disability. [Tr. 640] Dr. O'Donnell report begins by recounting Caldwell's subjective complaints, which included neck and low back pain, as well as left shoulder pain. [Tr. 640–41] Caldwell also complained of intermittent numbness of both hands and hearing loss. [Tr. 641] Additionally, Caldwell and his father told Dr. O'Donnell that Caldwell cannot perform "life skills" independently. *Id.* Caldwell reportedly relies on his parents for assistance managing money and is not fully literate. *Id.*

Upon examination, Dr. O'Donnell found that Caldwell's hearing was appropriate for conversation, although there was decreased perception of finger rub on the right. [Tr. 642] O'Donnell noted tenderness upon palpation of the musculature of the neck and back. *Id.* Although Caldwell's grip strength was normal, he was unable to complete strength testing of

the left arm, complaining of shoulder fatigue and neck pain. *Id.* Range of motion was limited in both shoulders and lower extremities. *Id.* Caldwell was able to squat and return to standing, but with pain. [Tr. 643] His toe and heel walking were symmetrical. *Id.* Caldwell was able to get up from a chair and get onto an examination table without assistance. *Id.*

O'Donnell concluded that Caldwell had the ability to perform activities involving sitting which allow frequent changing of position and appropriate breaks that did not involve the use of his head in extension and the rotation of his low back. [Tr. 643] Further, she believed Caldwell could walk short distances and stand for short periods of time. *Id.* Repetitive bending, squatting, kneeling, and lifting overhead, however, would all likely increase pain. *Id.* Any weight bearing activity (such as standing, walking, lifting, carrying, pushing, and, pulling) would be expected to increase symptoms of back and leg pain. *Id.* Dr. O'Donnell noted that Caldwell understood instructions with some repetitions and responded appropriately to all requests, even when uncomfortable. [Tr. 643–44]

On July 28, 2010, Carlos Hernandez, M.D., reviewed Caldwell's file and provided his opinion regarding Caldwell's residual functional capacity ("RFC"). [Tr. 178–183] He opined that Caldwell could occasionally lift and carry 20 pounds and could frequently lift and carry 10 pounds. [Tr. 178] Hernandez believed that Caldwell could stand, walk, and sit approximately six hours in an eight hour work day. *Id.* Further, he indicated that Caldwell could occasionally climb ramps and stairs, could occasionally crouch, kneel, and stoop, but that he could never climb ladders, ropes, or scaffolds. [Tr. 179]

On September 10, 2010, Caldwell's treating physician, Dr. Jeff Prater, provided a functional capacity assessment. [Tr. 674–678] On July 17, 2014, Dr. Prater, provided a deposition to Caldwell's attorney regarding Caldwell's functional abilities. [Tr. 765] As of

- 4 -

July 2014, Prater had been treating Caldwell for approximately fifteen years. [Tr. 771] Most recently, Prater had treated him for high blood pressure and allergies, as well as pain, for which he prescribed hydrocodone, Flexeril, and Meloxicam. [Tr. 766] Prater diagnosed Caldwell with fibromyalgia based on pain and the presence of trigger points in the neck and low back. [Tr. 767] He testified that Caldwell had carpal tunnel syndrome, based on a positive Tinel's sign and Phalen's sign. [Tr. 769] He also diagnosed Caldwell with lateral epicondylitis which, according to Prater, affected Caldwell's activities of daily living. [Tr. 770]

Dr. Prater opined that Caldwell could walk a fourth of a block without rest or severe pain. [Tr. 780] Further, Prater indicated that Caldwell could sit or stand for ten to fifteen minutes at a time and for two hours total in an eight-hour work day. *Id.* Prater believed that Caldwell would have to move around constantly during the day, as he must change positions to remain comfortable, even when he is at home. [Tr. 781] Prater stated that Caldwell could not lift anything heavier than a gallon of milk without causing or worsening pain. [Tr. 677, 781] Further, he believed that Caldwell's ability to grasp, twist, perform fine manipulations, and reach overhead were limited 100 percent due to his hand numbness and elbow pain. [Tr. 677, 782] Dr. Prater also concluded that Caldwell was prevented from stooping and crouching because it could exacerbate his pain as well as injure his low back. [Tr. 677, 782] Dr. Prater opined that Caldwell's symptoms and condition would progressively worsen. [Tr. 774]

Phil Pack, M.S., examined Caldwell for a psychological assessment on May 7, 2010. [Tr. 634] Pack reported that Caldwell had significant hearing problems and Pack was required to repeat words in a very loud voice. *Id.* Pack evaluated Caldwell's cognitive ability and word recognition, and looked for signs of malingering. [Tr. 636–37] Pack opined that Caldwell's general cognitive skills were in the borderline to low-average range and that his prognosis for

independent functioning was fair. [Tr. 637] Pack believed that Caldwell would be capable of managing benefits, were they awarded. [Tr. 638] He also recommended an audiology examination. *Id.*

On June 17, 2010, Ann Demaree, Ph.D., reviewed Caldwell's file and provided a mental residual functional capacity assessment. [Tr. 655–57] Demaree determined that Caldwell's abilities to understand, remember, and carry out detailed instructions were moderately limited. [Tr. 655] Further, his abilities to work in coordination with or proximity to others without being distracted by them was moderately limited, as was his ability to complete a normal workday or workweek without interruptions from psychologically-based symptoms. [Tr. 655–56] Additionally, Demaree concluded that Caldwell's ability to respond appropriately to changes in the work setting were moderately limited. [Tr. 656] On July 28, 2010, Jan Jacobson, Ph.D., also provided a mental residual functional capacity assessment, which mirrored the findings of Dr. Demaree. [Tr. 180–82]

On June 24, 2014, Michele Amburgey, M.A., performed a psychological assessment of Caldwell at the request of his attorney. [Tr. 751] Caldwell reported to Amburgey that he had memory problems and that he "stay[ed] nervous." [Tr. 752] Amburgey observed that Caldwell had problems recalling words during the session and that his overall intellectual resources appeared limited. *Id.* Caldwell's mother reported that Caldwell was held back in first, second, and either fifth or sixth grade. *Id.*

Amburgey administered the WAIS-IV, an instrument which assesses intelligence, and found Caldwell to have a Full Scale IQ of 67, which falls within the mild range of mental retardation. [Tr. 754] While his nonverbal reasoning abilities were better than his verbal reasoning skills, nearly all skills were below the norm for his age. *Id.* Amburgey concluded

- 6 -

that Caldwell could comprehend and follow through with only basic instructions. [Tr. 755] Further, she opined that he would not be able to comprehend, remember, or complete complex tasks due to his hearing, intellectual deficits, and physical well-being. *Id.*

The ALJ determined that Caldwell had the following severe impairments: affective disorder; borderline intellectual functioning; status-post cervical fusion with degenerative changes at multiple levels of the cervical spine; sprain and strain of the right shoulder; hearing loss in the right ear; and obesity. [Tr. 6] He determined, however, that Caldwell did not have an impairment or combination of impairments that met or medically equaled a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1, however. [Tr. 6–7]

After considering the record, the ALJ determined that Caldwell had the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). [Tr. 9] Specifically, the ALJ determined that

> [Caldwell] should avoid climbing ladders and scaffolds. He can climb ramps or stairs, stoop, crawl, kneel, and crouch occasionally. He can reach overhead with his right arm and shoulder no more than frequently. The claimant's ability to perform light work is diminished by hearing loss in the right ear. The claimant should avoid whole-body vibration. The claimant is mildly limited in activities of daily living. He has moderate limitations in social functioning and in concentration, persistence, or pace. The claimant is limited to unskilled, entry-level work.

[Tr. 9]

Because there were jobs existing in significant numbers in the national economy that Caldwell could perform, the ALJ determined that he had not been under a disability from the alleged onset date through the date of the ALJ's decision. [Tr. 14]

### III.     Standard of Review

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional activity ("RFC") and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV. Analysis

#### A. Determination Regarding Listing 12.05(C) is Supported by Substantial Evidence

Substantial evidence supports the ALJ's decision that Caldwell did not meet the criteria for listing 12.05(C) of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpart P, App. 1 ("Listing 12.05(C)"), which defines intellectual disability. A claimant must demonstrate the following to satisfy Listing 12.05(C): (1) that he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period;" [i.e., before age 22] (2) that he has a "valid verbal, performance,

or full scale IQ of 60 through 70;" and (3) that he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697–98 (6th Cir. 2007) (quoting Listing 12.05(C)).

In view of Caldwell's full-scale IQ of 67, the ALJ considered the requirements of Listing 12.05(C) and was not persuaded that Caldwell's intellectual deficits manifested prior to age 22 to a degree that constituted an intellectual disability. [Tr. 8] While Caldwell reportedly took special education classes throughout school, there were inconsistencies in his educational records. *Id.* For instance, Caldwell's standardized test scores were very poor when it came to "language mechanics," but he scored in the 33 to 44 percentile in "language expression." [Tr. 475–76] Accordingly, the ALJ gave some weight to these records but did not accept at face value that the scores reflect Caldwell's intellect during his formative years. [Tr. 9]

Critically, because adaptive functioning is distinct from intellectual functioning, a claimant is required to provide evidence of adaptive functioning deficits related to sub-average intellectual functioning during the developmental years. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014).[1] A history of special education and an adult IQ score are not necessarily sufficient to demonstrate that a claimant had adaptive functioning deficits prior to the age of 22. *Id.* The ALJ noted that Caldwell has held employment consistently during his adult life, including jobs identified as semi-skilled work. [Tr. 9] In his motion for summary

---

[1] Adaptive functioning has been described as "a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe*, 509 U.S. 312, 319 (1993)).

judgment, the plaintiff discussed adaptive limitations that he has experienced as an adult, but did not address evidence of adaptive limitations that manifested before the age of 22.

The ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, as long as substantial evidence supports the conclusion reached. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The record adequately supports the ALJ's conclusion that Caldwell does not meet Listing 12.05(C).

### B. ALJ Did Not Err Regarding Claimant's Obesity

Caldwell argues that, despite acknowledging his body mass index ("BMI") of 43.24, the ALJ did not incorporate his diagnosis of obesity into his RFC, as required under the law. Social Security Ruling 02–01p explains the evaluation of obesity. Although obesity is no longer a listed impairment, adjudicators must consider its effects when evaluating disability. SSR 02–01p, 2000 WL 628049 (Sept. 12, 2002). The ALJ indicated that obesity was one of Caldwell's severe impairments, but when combined with other impairments, it was not of such magnitude that it medically equaled a listed impairment. [Tr. 6–7]

The ALJ considered Caldwell's obesity in determining his RFC. [Tr. 7] Caldwell argues that this statement is mere "lip service," and that obesity was not actually considered. However, Caldwell has not identified any additional limitations that should have been incorporated because of his obesity, but were not. Further, all of the medical evidence the ALJ relied upon necessarily took Caldwell's obesity into consideration. SSR 02–01p does not dictate a particular mode of analysis regarding obesity—it merely directs the ALJ to consider the impairment, in combination with other impairments, at all stages of the sequential evaluation. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006). The claimant has

failed to show that the ALJ applied the law incorrectly or that the RFC was not supported by substantial evidence.

### C. Substantial Evidence Supports the ALJ's Determination

Caldwell argues, in a conclusory fashion, that the ALJ's determination that he is not disabled is not supported by substantial evidence. He contends that, when the evidence of record is considered in its entirety, it is apparent that he cannot perform "a wide range of even sedentary work on a regular and sustained basis." [Record No. 20–1, p. 11] Caldwell does not identify any particular evidence that the ALJ weighed inappropriately, however. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is insufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

Regardless of the claimant's failure to develop this argument, the Court has reviewed the record and finds that the ALJ's decision is supported by substantial evidence. Dr. Prater was the only treating physician who provided an opinion. The ALJ gave Dr. Prater's findings little weight because the extreme limitations he assessed were not supported by objective clinical findings or the entirety of the record. [Tr. 13] The ALJ assigned significant weight to the opinions of Drs. Hernandez and O'Donnell and these opinions were more consistent with each other and the record as a whole. *Id.*

With respect to the claimant's cognitive functioning, the ALJ gave significant weight to the opinions of Pack, Demaree, and Jacobson. [Tr. 13] The ALJ gave little weight to Michele Amburgey's opinion, as her opinions were inconsistent with the record as a whole, particularly Caldwell's history of long-term employment in semi-skilled jobs. *Id.*

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Defendant Nancy A. Berryhill's Motion for Summary Judgment [Record No. 21] is **GRANTED**.

2. Plaintiff Jason Caldwell's Motion for Summary Judgment [Record No. 20] is **DENIED.**

3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 10th day of March, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge